## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NADA SALEH,                                          Case No.

                Plaintiff,                                   Hon.

v.

ST. JOSEPH MERCY HEALTH SYSTEM
d/b/a ST. JOSEPH MERCY HOSPITAL,

                Defendant.

---

Joseph X. Michaels (P79084)
CROSON, TAUB, &
MICHAELS, PLLC
Attorneys for Plaintiff
455 E. Eisenhower Pkwy Ste. 75
Ann Arbor, MI 48108
jmichaels@ctmlawyers.com
734-519-0875

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, NADA SALEH, by and through her attorneys, COSON, TAUB, & MICHAELS, and for her Complaint against Defendant, ST. JOSEPH MERCY HEALTH SYSTEM, states as follows:

## PARTIES

1.     Plaintiff Nada Saleh is an individual residing in Washtenaw County, Michigan.

2.     Defendant ST. JOSEPH MERCY HEALTH SYSTEM. d/b/a ST. JOSEPH MERCY HOSPITAL ("St. Joe's") is a Michigan corporation with a registered business address in Plymouth, Michigan.

3.     Defendant St. Joe's conducts business and employs individuals in the Eastern District of Michigan.

## JURISDICTION AND VENUE

4.     This Court has general federal question authority pursuant to 28 U.S.C. § 1331, because Plaintiff brings her claims pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2611 *et seq.* and the Americans with Disabilities Act.

5.     The Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

6.     Venue is proper in this Court because Defendant obligated itself to Plaintiff within the Eastern District of Michigan, Defendant's registered business address and headquarters is located within the Eastern District of Michigan, and Plaintiff resides within the Eastern District of Michigan.

## STATEMENT OF FACTS

7.     Ms. Saleh is an U.S. Citizen of Arabic (Iraqi) descent, as well as a practicing Muslim.

8.     Ms. Saleh began working at St. Joe's beginning in 2015 as a volunteer in the sleep disorder center.

9.     In November 2015, Ms. Saleh was hired as an administrative employee in Michigan Heart.

10.    Throughout her employment, Ms. Saleh received positive performance reviews and work results.

11.    At all relevant times, Plaintiff was qualified for the positions she held and performed her job diligently and competently.

12.    Plaintiff did not receive any discipline throughout her employment prior to the events giving rise to this Complaint and received excellent performance evaluations.

13.    Ms. Saleh worked doing administrative tasks known as "labstracting" compiling relevant lab results and checking for irregularities before they were submitted to medical personnel.

14.    In March-April 2020, Ms. Saleh requested and received FMLA leave.

15.    Ms. Saleh had hypertension and a pulmonary condition with chronic cough and chest tightness, which put her at in increased risk of COVI-19 related complications.

16.    In addition, Ms. Saleh has the disability of depression, and Defendant was aware of said disability.

3

17.     In March 2020, St. Joe's approved Ms. Saleh for 12 weeks of leave, and Plaintiff exercised her right to said leave.

18.     In May 2020, while Plaintiff was still on her FMLA lave, she met with Jeremy Sharard, Kevin Moore, and her direct supervisor.

19.     Ms. Saleh was informed she was "no longer needed" because some her duties had been eliminated.

20.     Ms. Saleh was told that her termination had nothing to do with COVID-19 or the pandemic, but because a new software had eliminated her "labstracting" duties.

21.     However, before her leave, Ms. Saleh had been primarily performing other duties, including scanning, filing, obtaining releases from patients, and organizing test results.

22.     In addition, of the 14 clinical assistants, Ms. Saleh was the only one who did not receive alternate employment after the EPIC system was implemented.

23.     None of the other clerical assistants were Arab, Muslim or Iraqi, and to Ms. Saleh's knowledge, only one other had a disability.

24.     Defendant did not hold Plaintiff's job for the duration of her FMLA leave, as required by law

25.     Defendant summarily terminated Plaintiff's employment because of her race, national origin, religion, disability, and because of her use of FMLA leave.

26.     Any other stated basis for termination is pretextual.

27.     The Equal Employment Opportunity Commission issued Plaintiff a Dismissal and Notice of Right to Sue letter on September 29, 2021 and Plaintiff brings this suit with ninety days of receipt of same.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### INTERFERENCE

28.     Plaintiff incorporates here all previously stated allegations.

29.     Plaintiff was an "eligible employee" as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(2)(a):

    a.  Plaintiff worked for Defendant for more than one year; and

    b.  Plaintiff worked in excess of 1,250 hours for the proceeding 12 month period at all relevant times.

30.     Defendant is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(a), as an entity or person engaged in commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

31.     Plaintiff was entitled to leave as an eligible employee who had a serious health condition that made her unable to perform the functions of her position.

32. Plaintiff had a serious health condition as defined by federal regulations to the FMLA, 29 C.F.R. § 825.115(a)

33. Plaintiff's condition caused incapacity in that she was medically unable to perform her work.

34. Defendant terminated Plaintiff while on FMLA leave under a pretextual guide of a position "elimination."

35. Defendant interfered with Plaintiff's right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A); 29 C.F.R. § 825.214(a). and in doing so violated the FMLA.

36. Defendant was aware of its duties under the FMLA but willfully violated the FMLA.

37. As such, Defendant's willful actions interfered with Plaintiff's right to FMLA leave as prohibited by the FMLA. 29 U.S.C. § 2615(a)(1).

38. As a result of Defendant's conduct, Plaintiff is entitled to back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits, compensatory damages, pain and suffering and other emotional damages, punitive damages, interest, attorney's fees, costs, and all other such relief the Court deems just and equitable.

## COUNT II
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

6

## **RETALIATION**

39.   Plaintiff incorporates here all previously stated allegations.

40.   As stated in Count I, Plaintiff was qualified for leave under the FMLA.

41.   Plaintiff requested medical leave as required by her doctor for an extended leave and provided medical documentation stating the restriction to Defendant as soon as practicable.

42.   Defendant retaliated against Plaintiff for taking protected medical leave by terminating Plaintiff's employment.

43.   Any other stated basis for termination is pretextual.

44.   Terminating Plaintiff for taking protected medical leave was retaliatory and a violation of the FMLA. 29 U.S.C. § 2615(a)(2).

45.   Defendant's actions in terminating Plaintiff in retaliation for her FMLA leave were willful.

46.   As a result of Defendant's conduct, Plaintiff is entitled to back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits, compensatory damages, pain and suffering and other emotional damages, punitive damages, interest, attorney's fees, costs, and all other such relief the Court deems just and equitable.

## **COUNT III**
## **DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

47.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

48.     Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit: a physical or mental  impairment, which substantially limits one or more of her major life activities, and a record of such impairment.

49.     Defendant is an employer and Plaintiff is an employee as defined by the Americans with Disabilities Act, 32 U.S.C. § 12111(4)-(5).

50.     Plaintiff is a qualified individual with a disability as defined by the ADA.

51.     Plaintiff, with or without reasonable accommodation, was able to perform the essential functions of her employment duties with Defendant.

52.     Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

53.     Defendant discriminated against Plaintiff on account of her real and perceived disability in violation of the ADA, 42 U.S.C. § 12112, by and through their agents, servants, and/or employees, by acts including, but not limited to terminating Plaintiff's employment.

54.     Defendant's actions in violation of the ADA were willful.

55.     As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

56.     As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

57.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

58.     Plaintiff has a disability as defined by the Americans with Disabilities Act, to-wit: a physical or mental impairment, which substantially limits one or more of her major life activities, and a record of such impairment.

59.     Defendant is an employer and Plaintiff is an employee as defined by the Americans with Disabilities Act, 32 U.S.C. § 12111(4)-(5).

60.    Plaintiff is a qualified individual with a disability as defined by the ADA.

61.    Plaintiff, with or without reasonable accommodation, is able to perform the essential functions of her employment duties with Defendant.

62.    Defendant perceived and/or regarded Plaintiff as having a disability. Plaintiff was therefore regarded as having a disability under 42 U.S.C. § 12102(1)(C).

63.    Plaintiff informed Defendant of her disability requested a reasonable accommodation, namely leave time during COVID-19.

64.    As a result of Plaintiff requesting a reasonable accommodation, Defendant retaliated against Plaintiff by actions including but not limited to, discharging Plaintiff.

65.    Defendant's actions in violation of the ADA were willful.

66.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

67.    As a further direct and proximate result of Defendant's violation of the ADA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and

ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT V
## DISCRIMINATION IN VIOLATION OF THE PERSONS WITH DIABILITIES CIVIL RIGHTS ACT

68.     Plaintiff incorporates here all previously stated allegations.

69.     At all times relevant hereto, Plaintiff was an employee and Defendant was an employer as defined by Michigan's Persons with Disabilities Civil Rights Act.

70.     Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights.

71.     Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

72.     Defendant discriminated against Plaintiff on account of her real and perceived disability in violation of PWDCRA, MCL § 37.1102(1), by acts including, but not limited to: failing to provide Plaintiff with reasonable accommodation for her disability and terminating Plaintiff's employment.

73.     As a direct and proximate result of Defendant's violation of the PWDCRA, as aforestated, Plaintiff has suffered depression, emotional and physical

distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

74.     As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT VI
## RETALIATION IN VIOLATION OF THE PERSONS WITH DIABILITIES CIVIL RIGHTS ACT

75.     Plaintiff incorporates here all previously stated allegations.

76.     As stated above, Plaintiff has a disability as defined by Michigan's Persons with Disabilities Civil Rights Act.

77.     Defendant perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL § 37.1103(d)(ii).

78.     Defendant retaliated against Plaintiff on account of her disability for her request for a reasonable accommodation in violation of the PWDCRA, MCL § 37.1602, by and through its agents, servants, and/or employees, by acts including, but not limited to terminating Plaintiff's employment.

12

79.     As a direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

80.     As a further direct and proximate result of Defendant's violation of the PWDCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT VII
## RACIAL DISCRIMINATION IN CONTRACTING IN VIOLATION OF 42 U.S.C. § 1981

81.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

82.     By the conduct described above, Defendant intentionally deprived Plaintiff, who is Arab, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendant in violation of 42 U.S.C. 1981.

83.     But for Plaintiff's race, Defendant would not have ended its contractual employment relationship with Plaintiff.

13

84.     Defendant's course of conduct was done with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

85.     As a result of Defendant's unlawful conduct, Plaintiff was harmed and continues to be harmed in that she has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT VIII
## RACIAL/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII

86.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

87.     At all relevant times, Defendant was an employer with greater than 15 employees, and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

88.     Plaintiff is a member of a protected group under Title VII due to her race (Arab-American) and national origin (Iraqi).

89.     Defendant discriminated against Plaintiff because of her race and national origin in the terms and conditions of her employment in violation of 42 U.S.C. § 2000e-2(a)(1).

14

90. Defendant subjected Plaintiff to adverse employment actions up to and including termination.

91. Plaintiff's race and/or national origin was a motivating factor in Defendant subjecting Plaintiff to such adverse actions.

92. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her race and/or national origin, even though other factors may have motivated the termination in violation of 42 U.S.C. § 2000e-2(m).

93. But for Plaintiff's race and/or national origin, Defendant would not have subjected Plaintiff to such adverse actions.

94. Defendant's course of conduct was done willfully and/or with reckless disregard to Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

95. As a result of Defendant's conduct, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT IX
## RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII

96. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

97.    At all relevant times, Defendant was an employer with greater than 15 employees, and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

98.    Plaintiff is a member of a protected group under Title VII due to her religion (Muslim)

99.    Defendant discriminated against Plaintiff because of her religion in the terms and conditions of her employment in violation of 42 U.S.C. § 2000e-2(a)(1).

100.    Defendant subjected Plaintiff to adverse employment actions up to and including termination.

101.    Plaintiff's religion was a motivating factor in Defendant subjecting Plaintiff to such adverse actions.

102.    Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her religion, even though other factors may have motivated the termination in violation of 42 U.S.C. § 2000e-2(m).

103.    But for Plaintiff's religion, Defendant would not have subjected Plaintiff to such adverse actions.

104.    Defendant's course of conduct was done willfully and/or with reckless disregard to Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

105. As a result of Defendant's conduct, Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT X
## RACIAL AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

106. Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

107. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101.

108. Plaintiff is a member of a protected group because of her race, Arab-American and national origin (Iraqi).

109. Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

110. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her race and/or national origin in violation of M.C.L. § 37.2202(1)(a).

111. But for Plaintiff's race and/or national origin, Defendant would not have terminated her.

17

112.   As a result of Defendant's unlawful conduct, Plaintiff was harmed and continues to be harmed in that she has suffered economic and non-economic loss, including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## COUNT XI
## RELIGIOUS DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

113.   Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

114.   At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101.

115.   Plaintiff is a member of a protected group because of her religion, Muslim.

116.   Defendant subjected Plaintiff to adverse employment actions, up to and including termination.

117.   Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her religion in violation of M.C.L. § 37.2202(1)(a).

118.   But for Plaintiff's religion, Defendant would not have terminated her.

119.   As a result of Defendant's unlawful conduct, Plaintiff was harmed and continues to be harmed in that she has suffered economic and non-economic loss,

18

including but not limited to lost wages, damage to professional reputation, emotional distress, outrage, and humiliation.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, NADA SALEH, requests that the Court enter the following relief:

a. back pay, liquidated damages in the amount of back pay plus interest, reinstatement, front pay, back and front benefits;

b. compensatory damages and exemplary damages, including pain and suffering and other emotional damages, and punitive damages;

c. an injunction prohibiting Defendant from further violations of the law as described here;

d. post-judgment assignment of attorney's fees, costs, and interest; and

e. any other relief to which Plaintiff may be entitled.

Respectfully Submitted,
CROSON, TAUB, & MICHAELS,
PLLC

/s/ Joseph X. Michaels
Joseph X. Michaels
Attorneys for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
jmichaels@ctmlawyers.com
(734) 519-0875

Dated: December 23, 2021

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

NADA SALEH,                                    Case No.

              Plaintiff,                      Hon.

v.

ST. JOSEPH MERCY HEALTH SYSTEM
d/b/a ST. JOSEPH MERCY HOSPITAL,

              Defendant.

---

Joseph X. Michaels (P79084)
CROSON, TAUB, &
MICHAELS, PLLC
Attorneys for Plaintiff
455 E. Eisenhower Pkwy Ste. 75
Ann Arbor, MI 48108
jmichaels@ctmlawyers.com
734-519-0875

---

## DEMAND FOR TRIAL BY JURY

    NOW COMES Plaintiff, NADA SALEH, by and through her attorneys,

CROSON, TAUB, & MICHAELS, PLLC and hereby demands for a trial by jury,

for all issues so triable.

                    Respectfully Submitted,
                    CROSON, TAUB, & MICHAELS, PLLC

                    /s/ Joseph X. Michaels
                    Joseph X. Michaels
                    Attorneys for Plaintiff
                    455 E. Eisenhower Pkwy, Ste. 75
                    Ann Arbor, MI 48108

December 23, 2021

jmichaels@ctmlawyers.com
(734) 519-0875